[Cite as *State v. Mohamed*, 2017-Ohio-9012.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 102398 and 103602**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# SHUAIB A. HAJI MOHAMED

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585924-A

**BEFORE:** Stewart, P.J., Boyle, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 14, 2017

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender

Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, OH 44113

**Also Listed:**

Marcus S. Sidoti
Jordan & Sidoti L.L.P.
50 Public Square, Suite 1900
Cleveland, OH 44113

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Kelly N. Mason
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

**{¶1}** This appeal is before us on remand from the Ohio Supreme Court. *See State v. Mohamed*, Slip Opinion No. 2017-Ohio-7468 ("*Mohamed II*").

**{¶2}** A jury found defendant-appellant Shuaib A. Haji Mohamed guilty of gross sexual imposition, attempted gross sexual imposition, two counts of kidnapping, and one count of attempted rape. On direct appeal, we overruled six assignments of error, but reversed the conviction for kidnapping and ordered a new trial. *State v. Mohamed*, 8th Dist. Cuyahoga Nos. 102398 and 103602, 2016-Ohio-1116 ("*Mohamed I*"). We held that the jury should have been instructed on R.C. 2905.01(C)(1), which states that a conviction for kidnapping shall be lowered by one degree if the victim is released in a safe place unharmed, because the evidence showed that the victim was released in a safe place and suffered no physical harm. We noted case law finding that psychological harm is not the type of harm considered for purposes of the statutory analysis. *Id.* at ¶ 36. With there being no evidence that the victim suffered physical harm, we concluded that the defense was ineffective for failing to seek a jury instruction and that the trial court committed plain error by not giving the instruction for the jury to consider. *Id.* at ¶ 37. Because the reversal on the kidnapping count[1] required a new trial, we found it mooted consideration of Mohamed's eighth assignment of error that the court erred by ordering

---

[1] There were actually two counts of kidnapping that would have been affected by our decision.

consecutive service of the sentences imposed for kidnapping and attempted rape. *Id*. at ¶ 46.

{¶3} The Supreme Court reversed in *Mohamed II*. It held that the word "harm" under R.C. 2905.01(C)(1) is not limited to physical harm, therefore psychological harm is contemplated by the statute. *Mohamed II*, at ¶ 13-15. It then concluded that trial counsel's failure to request a safe-place-unharmed instruction was trial strategy. *Id.* at ¶ 25. It also found that the trial court did not commit plain error by failing to provide the jury instruction on its own initiative. *Id.* at ¶ 28. It reinstated the conviction for kidnapping and remanded the case to this court for consideration of Mohamed's eighth assignment of error relating to consecutive sentences. *Id.* at ¶ 30.

{¶4} In his eighth of assignment of error, Mohamed complains that the court erred by ordering consecutive service of the ten-year sentence for kidnapping and the five-year sentence for attempted rape. Mohamed concedes that the court made the required findings in support of consecutive sentences, but argues that (1) the court erred by considering "six arrests involving alcohol" to be a criminal record, and (2) the length of his sentence is disproportionate to his conduct given that both the state and the victim agreed prior to sentencing that they would recommend a five-year sentence in exchange for Mohamed waiving his right to appeal.

{¶5} To order consecutive service of sentences, the court must make three separate findings under R.C. 2929.14(C)(4). The first two findings are common to all consecutive sentences — that (1) consecutive service is necessary to protect the public from future

crime or to punish the offender, and (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *See* R.C. 2929.14(C)(4). The third finding varies from case-to-case: (a) the offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶6} Mohamed argues that the record does not support a finding that his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime that he might commit. He maintains that when defense counsel told the court that Mohamed had "no criminal background whatsoever," the court took issue with that statement, telling Mohamed that "in fact, you do have a criminal record. One[,] two, three, four, five, six arrests involving alcohol; some of them involving driving. That it's clear that, you know, you're a danger to the community." This record of arrests caused the court to conclude that Mohamed was a "danger to the community."

Tr. at 1290. Mohamed argues that alcohol-related arrests do not make him a danger to the public.

**{¶7}** Mohamed fails to recognize that the court did not impose consecutive sentences because of his history of criminal conduct — it imposed consecutive sentences because at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Mohamed's conduct. The court clearly stated this on the record: "The harm occasioned on the victim is so great and unusual, in this case, and I heard all the facts of the case. That a single term would not adequately punish you." Mohamed's argument about his alcohol-related arrests is irrelevant to the court's actual findings.

**{¶8}** Mohamed next claims that a 15-year sentence is "clearly disproportionate to sentences imposed on similarly situated offenders." This argument erroneously conflates the proportionality requirement of R.C. 2929.14(C)(4) with sentencing consistency under R.C. 2929.11(B) (a sentence should be "consistent with sentences imposed for similar crimes committed by similar offenders."). *See State v. Carson*, 8th Dist. Cuyahoga No. 102424, 2015-Ohio-4183, ¶ 7. "R.C. 2929.14(C)(4) does not direct the trial court to compare sentences between similarly situated offenders in making the required proportionality analysis." *State v. Dennison*, 10th Dist. Franklin No. 14AP-486, 2015-Ohio-1135, ¶ 20.

**{¶9}** Finally, Mohamed argues that his 15-year sentence failed to take into account the state's willingness to accept a far lower sentence: a pretrial offer by the state would have had Mohamed plead guilty to a fourth-degree gross sexual imposition and third-degree count of abduction with "a presumption of probation" and a post-trial offer would have had Mohamed agree to waive his appellate rights in exchange for a five-year sentence.

**{¶10}** The court had no obligation to sentence Mohamed consistent with the terms of a pretrial plea offer because he rejected the offer. *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 15. In addition, the court made it clear to Mohamed before trial that any sentence it imposed if Mohamed were to be tried and found guilty would be based on additional details about the case. Mohamed thus has no argument that the court was somehow bound to sentence him within the parameters of a rejected plea offer. *State v. Paul*, 8th Dist. Cuyahoga No. 79596, 2002 Ohio App. LEXIS 551, 40 (Feb. 14, 2002) ("It would be counterintuitive to think that the court is somehow bound to the sentence limits discussed in the plea negotiations, even though [the plea offer] had been rejected by the accused.").

**{¶11}** There was no agreement to a post-trial sentencing offer to recommend a five-year sentence. At sentencing, defense counsel told the court that he and the state discussed potential sentences with the hope that the victim would agree to a recommended sentence. Defense counsel told the court that those discussions resulted in the state agreeing to recommend a five-year sentence. The state agreed that it discussed

a post-trial sentencing deal in which Mohamed would accept a five-year sentence and waive his right to appeal so that the victim would not have to go through another trial. The state told the court that the victim was "okay" with the offer. That offer, however, was rejected by the victim when she submitted a letter asking the court to impose the "max sentence" on Mohamed. The court noted that the victim's decision to submit a letter in which she asked the court to impose the maximum sentence "clearly indicated what she felt about the case and there's clearly been no agreement with respect to a recommended sentence." The court had no obligation to sentence Mohamed consistent with the terms of a post-trial agreement that did not exist.

**{¶12}** Judgment affirmed.

It is ordered that appellee recover of appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR